**FILED**

SEP 1 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NORMAN A. MILLMAN,
*440 FAIRMOUNT AVE.*
*PHILADELPHIA, PA-19123* Petitioner,

v.

UNITED STATES PATENT AND
TRADEMARK OFFICE,

    Respondent.

PETITION FOR REVIEW

CASE NUMBER 1:05CV01827

JUDGE: Reggie B. Walton

DECK TYPE: Administrative Agency Review

DATE STAMP: 09/14/2005

    Norman A. Millman hereby petitions the court for review of the Decision on "Petition," which is attached hereto, which was mailed on August 16, 2005 by the United States Patent and Trademark Office.

*/s/ Norman A. Millman*

Norman A. Millman
Trans-Atlantic Company
440 Fairmount Avenue
P.O. Box 37006
Philadelphia, PA 19123

Dated: September 13, 2005

## CERTIFICATE OF SERVICE

I, Norman A. Millman, hereby certify that a true and correct copy of the foregoing Petition for Review was served on counsel for Respondent, via first class mail, postage prepaid, on the 13th day of September, 2005, addressed as follows:

> General Counsel
> United States Patent and Trademark Office
> P.O. Box 15667
> Arlington, VA  22215

_____
Norman A. Millman



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Paper No.17



RECEIVED
AUG 19 2005
CAESAR, RIVISE, BERNSTEIN
COHEN & POKOTILOW, LTD.

MANNY D POKOTILOW
1635 MARKET ST
12TH FLOOR
PHILADELPHIA PA 19103



DOCKETED
AUG 19 2005
C.F.J.

COPY MAILED

AUG 1 6 2005

OFFICE OF PETITIONS

In re Patent No. 5,481,890                  :
Issue Date: January 9, 1996                 :
Application No. 08/029,545                  :   DECISION ON PETITION
Filed: March 11, 1993                       :
Attorney Docket No. 5001                    :
                                            :

This is a decision on the renewed petition under 37 CFR 1.378(b), filed October 13, 2004, to accept the unavoidably delayed payment of a maintenance fee for the above-identified patent.

The petition is **DENIED**. This decision is a final agency action within the meaning of 5 U.S.C. § 704 for purposes of seeking judicial review. See MPEP 1002.02.

<u>Procedural History</u>:

- The above-identified patent issued on January 9, 1996.

- The first maintenance fee could have been timely paid during the period from January 9, 1999 through July 9, 1999, or with a late payment surcharge during the period from July 10, 1999 through January 9, 2000.

FILED
05 1827
SEP 1 4 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Patent No. 5,481,890                                                                     Page 2

- No maintenance fee was received, and as such, the patent expired on January 10, 2000.

- The 2 year time period for filing a petition under 37 C.F.R. § 1.378(c) expired on January 9, 2002.

- Patentee filed a petition to revive under 37 C.F.R. § 1.378(b) on February 11, 2004.

- The petition was dismissed in a decision mailed on March 16, 2004.

- The instant renewed petition under 37 C.F.R. § 1.378(b) was filed on October 13, 2004, made timely by purchasing a five month extension of time.

**Evidence Presented on Petition:**

A review of the petition and renewed petition reveal the following events giving arise to petitioner's assertion of unavoidable delay. After receiving the above-identified letters patent, patentee's attorney, Paul Maleson, sent patentee, Norman Millman, a copy of the patent, together with a letter advising Millman of the requirement to pay maintenance fees. The letter reminded Millman that while Maleson would attempt to notify Millman when the first maintenance fee became due, it was Millman's responsibility for being aware when maintenance fees were due. In addition, this letter informed Millman that the first maintenance fee was due by January 9, 2000. See Exhibit 1 of Maleson declaration. This letter was received by Millman. See Para. 3 of Millman declaration.

Maleson docketed the first maintenance fee, and prepared a letter for Millman on or about July 14, 1999, asking Millman whether or not he desired to pay the maintenance fee to keep the patent in effect. Maleson has no recall of whether the letter to Millman was ever sent. Though Maleson stated in his first affidavit that he has "no reason to believe that [he] deviated from his normal practice which was to send the letter to Mr. Millman"[1], Maleson's second affidavit indicates that such letter may not have been mailed. Millman states that he never received the letter.

After receiving no response from Millman, Maleson assumed that Millman had no intention of paying the maintenance fee. In or around October of 2000, Millman terminated his relationship with Maleson and requested that his files be returned to him. Upon receiving the files from Maleson, Millman placed them in storage. They remained in storage until November of 2003, at which time Millman contacted a new attorney about obtaining a different patent. At that time it was discovered that the instant patent had expired for failure to pay the maintenance fee. Maleson admits that he failed to forward the Notice of Patent Expiration to Millman. However, a copy was found in the file that was returned to Millman in October of 2000.

---

[1] Para. 9 of Maleson declaration.

Patent No. 5,481,890                                                      Page 3

Petitioner's arguments, in effect, are as follows: (1). petitioner was not provided any notice of when the maintenance fee was due; (2). the late payment of the maintenance fee was solely caused by the actions of petitioner's prior counsel Maleson, whom petitioner alleges was assigned the responsibility to track the maintenance fees and failed to do so; (3). petitioner clearly desired to pay the maintenance fee for the instant patent, as evidenced by his filing of a related patent application improving and expanding upon the instant patent; and (4). the expiration of his patent constitutes a deprivation of property without due process of law.

**Relevant Statutes, Rules and Regulations:**

35 U.S.C. § 41(c)(1) states that:

> The Director may accept the payment of any maintenance fee required by subsection (b) of this section which is made within twenty-four months after the six-month grace period if the delay is shown to the satisfaction of the Director to have been unintentional, or at any time after the six-month grace period if the delay is shown to the satisfaction of the Director to have been unavoidable. The Director may require the payment of a surcharge as a condition of accepting payment of any maintenance fee after the six-month grace period. If the Director accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having expired at the end of the grace period.

37 C.F.R. § 1.378(b) provides that:

> Any petition to accept an unavoidably delayed payment of a maintenance fee must include:
>
> (1) The required maintenance fee set forth in §1.20(e) through (g);
>
> (2) The surcharge set forth in §1.20(i)(1); and
>
> (3) A showing that the delay was unavoidable since reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent. The showing must enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly.

**Opinion:**

§ 1.378(b)(3) is at issue in this case. Acceptance of a late maintenance fee under the unavoidable delay standard is considered under the same standard for reviving an abandoned application under 35 U.S.C. § 133. This is a very stringent standard. Decisions on reviving abandoned applications on the basis of "unavoidable" delay have adopted the reasonably prudent person standard in determining if the delay was unavoidable:

> The word unavoidable' . . . is applicable to ordinary human affairs, and requires no more or greater care or diligence than is generally used and observed by prudent and careful men in relation to their most important business. It permits them in the exercise of this care to rely upon the ordinary and trustworthy agencies of mail and telegraph, worthy and reliable employees, and such other means and instrumentalities as are usually employed in such important business. If unexpectedly, or through the unforeseen fault or imperfection of these agencies and instrumentalities, there occurs a failure, it may properly be said to be unavoidable, all other conditions of promptness in its rectification being present. In re Mattullath, 38 App. D.C. 497, 514-15 (1912)(quoting Pratt, 1887 Dec. Comm'r Pat. 31, 32-33 (1887)); see also Winkler v. Ladd, 221 F. Supp. 550, 552, 138 USPQ 666, 667-68 (D.D.C. 1963), aff'd, 143 USPQ 172 (D.C. Cir. 1963); Ex parte Henrich, 1913 Dec. Comm'r Pat. 139, 141 (1913).

In addition, decisions on revival are made on a "case-by-case basis, taking all the facts and circumstances into account." Smith v. Mossinghoff, 671 F.2d 533, 538, 213 USPQ 977, 982 (D.C. Cir. 1982). Finally, a petition cannot be granted where a petitioner has failed to meet his or her burden of establishing that the delay was "unavoidable." Haines v. Quigg, 673 F. Supp. 314, 316-17, 5 USPQ2d 1130, 1131-32 (N.D. Ind. 1987).

Moreover, delay resulting from the lack of knowledge or improper application of the patent statutes, rules of practice or the Manual of Patent Examining Procedure, however, does not constitute "unavoidable" delay. See id.; Vincent v. Mossinghoff, 230 USPQ 621, 624 (D.D.C. 1985); Smith v. Diamond, 209 USPQ 1091 (D.D.C. 1981); Potter v. Dann, 201 USPQ 574 (D.D.C. 1978); Ex parte Murray, 1891 Dec. Comm'r Pat. 130, 131 (1891).

The decision will now address petitioner's arguments in turn.

1. Petitioner Was Not Provided Any Notice of When the Maintenance Fee Was Due:

Delay resulting from petitioner's lack of receipt of any maintenance fee reminder(s), or petitioner's being unaware of the need for maintenance fee payments, does not constitute "unavoidable" delay. See In re Patent No. 4,409,763, 7 USPQ2d 1798, 1800 (Comm'r Pat. 1988)), aff'd sub nom, Rydeen v. Quigg, 748 F. Supp. 900, 16 USPQ2d 1876 (D.D.C. 1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991)(table), cert. denied, 502 U.S. 1075 (1992). See also "Final Rules for Patent Maintenance Fees," 49 Fed. Reg. 34716, 34722-23 (Aug. 31, 1984), reprinted in 1046 Off. Gaz. Pat. Office 28, 34 (September 25, 1984). Under the statutes and regulations, the Office has no duty to notify patentee of the requirement to pay maintenance fees or to notify patentee when the maintenance fee is due. While the Office mails maintenance fee reminders strictly as a courtesy, it is solely the responsibility of the patentee to ensure that the maintenance fee is timely paid to prevent expiration of the patent. The failure to receive the Reminder does not relieve the patentee of the obligation to timely pay the maintenance fee, nor will it constitute unavoidable delay if the patentee seeks reinstatement under the regulation. Rydeen, 748 F. Supp at 905. Moreover, a

patentee who is required by 35 USC 41(c)(1) to pay a maintenance fee within 3 years and six months of the patent grant, or face expiration of the patent, is not entitled to any notice beyond that provided by publication of the statute. Id. at 906.

Furthermore, the Letters Patent contains a Maintenance Fee Notice that warns that the patent may be subject to maintenance fees if the application was filed on or after December 12, 1980. While the record is unclear if petitioner ever read the Notice, petitioner's failure to read the Notice does not vitiate the Notice, nor does the delay resulting from such failure to read the Notice establish unavoidable delay. See Ray v. Lehman, 55 F. 3d 606, 610, 34 USPQ2d 1786, 1789 (Fed. Cir. 1995). The mere publication of the statute was sufficient notice to petitioner. Rydeen at 906.

Moreover, petitioner admits to receiving attorney Maleson's January 16, 1996 letter expressly warning petitioner of the need to pay the first maintenance fee by January 9, 2000. See para. 3 of Millman declaration. In addition, notice for the maintenance fee due for this patent was published in the January 12, 1999 Official Gazette (OG), and notice of expiration was published in the March 21, 2000 OG. See In re 4,409,763, supra.

For these reasons, petitioner's argument concerning lack of notice is insufficient to establish unavoidable delay within the meaning of 35 USC 41(c)(1) and 37 CFR 1.378(b).

2. The Late Payment of the Maintenance Fee Was Solely Caused by the Actions of Petitioner's Prior Counsel Maleson, Whom Petitioner Alleges Was Assigned the Responsibility to Track the Maintenance Fees and Failed to Do So:

In determining whether a delay in paying a maintenance fee was unavoidable, one looks to whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person. Ray, 55 F.3d at 608-609, 34 USPQ2d at 1787. The showing of record does not support petitioner's contention that Maleson had assumed the obligation to monitor and track the maintenance fee payment. On the contrary, Maleson's letter to Millman, dated January 16, 1996, which Millman does not deny receiving, states that Maleson would "attempt to notify" Millman when the first maintenance fee was due. Maleson, through this letter, further notified Millman that "the client takes primary responsibility for being aware when maintenance fees are due", and reminded Millman that the first maintenance fee deadline was January 9, 2000. In light of the foregoing, the contention that Maleson had been so obligated is untenable. Accordingly, the appropriate focus is on the actions of Millman, and specifically, whether Millman had taken steps to ensure the timely payment of the maintenance fee. See 37 CFR 1.378(b)(3). The evidence is devoid of such a showing, apparently as a result of Millman's belief that Maleson was responsible for tracking the maintenance fee. While the delay in payment of the maintenance fee may have been unintentional as asserted by petitioner throughout the petitions, petitioner has failed to provide an adequate showing that the delay was unavoidable.

Moreover, even assuming, arguendo, that petitioner was justified

Patent No. 5,481,890                                                            Page 6

in relying upon Maleson for payment of the maintenance fees notwithstanding the letter from Maleson of January 16, 1996 to the contrary, such reliance per se does not provide petitioner with a showing of unavoidable delay within the meaning of 37 CFR 1.378(b) and 35 USC 41(c)). California Medical Products v. Technol Med. Prod., 921 F.Supp. 1219, 1259 (D.Del. 1995). Rather, such reliance merely shifts the focus of the inquiry from petitioner to whether Maleson acted reasonably and prudently. Id. Nevertheless, petitioner is bound by any errors that may have been committed by Maleson. Id. If Maleson breached his duty to docket the instant patent for payment of the maintenance fees and/or appropriately notify petitioner of an impending maintenance fee due date, then petitioner is reminded that the U.S. Patent and Trademark Office must rely on the actions or inactions of duly authorized and voluntarily chosen representatives of the applicant, and applicant is bound by the consequences of those actions or inactions. Link v. Wabash, 370 U.S. 626, 633-34 (1962). Specifically, petitioner's delay caused by the mistakes or negligence of his voluntarily chosen representative does not constitute unavoidable delay within the meaning of 35 USC 133. Haines v. Quigg, 673 F. Supp. at 317; Smith v. Diamond, 209 USPQ 1091 (D.D.C. 1981); Potter v. Dann, 201 USPQ 574 (D.D.C. 1978); Ex parte Murray, 1891 Dec. Comm'r Pat. 130, 131 (Comm'r Pat. 1891).

The Office is not the proper forum for resolving a dispute between a patent owner and his representative as to who bore the responsibility for paying a maintenance fee. Ray, 55 F.3d at 610, 34 USPQ2d at 1789. In any event, delay resulting from a failure of communication between a patent owner and his representative as to the responsibility for payment of a maintenance fee does not constitute unavoidable delay within the meaning of 35 USC 41(c)) and 37 CFR 1.378(b). See id. That both parties failed to take adequate steps to ensure that each fully understood the other party's meaning, and thus their own obligation in the matter of payment of maintenance fees, does not reflect the due care and diligence of prudent and careful persons with respect to their most important business.

In addition, the petition fails to establish patentee's diligence following the discharge of attorney Maleson in 2000. Diligence on the part of petitioner is essential to show unavoidable delay. See Douglas v. Manbeck, 21 USPQ2d 1697, 1699-1700 (E.D. Pa. 1991), aff'd, 975 F.2d 869, 24 USPQ2d 1318 (Fed. Cir. 1992) (applicant's lack of diligence over a two and one half year period following the death of his attorney precluded a finding of unavoidable delay). As in Douglas, the record lacks an adequate showing of petitioner's diligence in this matter during the period extending from the time petitioner discharged attorney Maleson in October of 2000, until the filing of the first petition on February 11, 2004, some three (3) years. Moreover, as petitioner's discharge of Maleson was admittedly prompted by a "long pattern of continued lateness and even neglect on the part of [Maleson]" (para. 12 and 13 of renewed petition), a reasonably prudent person in relation to his or her most important business would have promptly taken steps to verify that the patent was not jeopardized by the actions or inactions of such an agent. Here, a simple review of the file returned by Maleson on October 10, 2000, would have revealed that the patent had expired.

Patent No. 5,481,890                                                              Page 7

3. <u>Petitioner Clearly Desired to Pay the Maintenance Fee for the Instant Patent, as Evidenced by its Commercial Value and Petitioner's Filing of a Related Patent Application Improving and Expanding upon the Instant Patent</u>:

Petitioner's arguments are unpersuasive. The standard is not whether petitioner intended to pay the maintenance fee, but rather, whether the delay in paying the maintenance fee was unavoidable. The "unavoidable" delay standard required a showing of the steps taken to ensure the timely payment of the maintenance fee. 37 CFR 1.378(b)(3). The fact that petitioner filed another patent application related to the instant patent has no bearing on the issue of what steps were taken to ensure timely payment of the maintenance fee in the instant patent.

Similarly, evidence establishing the commercial value of the patent, and investment of resources towards commercialization of the invention, while potentially probative of whether a delay was unintentional, is simply not probative of whether the delay was unavoidable. See <u>In re Patent No. 4,409,763</u>, at 1800:

> Petitioner argues in favor of acceptance of delayed payment of maintenance fees by alluding to the commercial value of the patent. However, under the 'unavoidable' standard, the PTO cannot apply the patent statutes and rules selectively, based on commercial success of a patent. It would be appropriate, however, for petitioners or those acting on their behalf to exercise extraordinary care to insure that so valuable a property not be lost through failure to follow laws and regulations.

4. <u>The Expiration of His Patent Constitutes a Deprivation of Property Without Due Process of Law</u>:

Petitioner also argues that the expiration of his patent violates petitioner's right to due process. In addition, petitioner argues that interpreting 35 U.S.C. 41(c) to permit expiration of a patent having a commercial value far in excess of the maintenance fees any reasonable lateness fee is inconsistent with the intent of Congress. Suffice it to say that courts have not found such arguments persuasive. See <u>Rydeen</u> and <u>Ray v. Lehman</u>, supra.

**Conclusion**:

The prior decision which refused to accept under 37 C.F.R. § 1.378(b) the delayed payment of a maintenance fee for the above-identified patent has been reconsidered. For the above stated reasons, however, the delay in this case cannot be regarded as unavoidable within the meaning of 35 U.S.C. § 41(c)(1) and 37 C.F.R. § 1.378(b). As stated in 37 C.F.R. § 1.378(e), no further reconsideration or review of this matter will be undertaken.

Since this patent will not be reinstated, the $400 and $1075 maintenance fees and the $700 surcharge fee submitted by

Patent No. 5,481,890                                                            Page 8

petitioner are refundable. Petitioner may request a refund by writing to: Mail Stop 16, Director of the USPTO, P.O. Box 1450, Alexandria, VA 22313-1450. Petitioner should enclose a copy of this decision with the request. The $130 fee for requesting reconsideration and the $1,040 fee for the five month extension of time are not refundable.

Telephone inquiries concerning this communication should be directed to Petitions Attorney Cliff Congo at (571)272-3207.

Charles Pearson
Director
Office of Petitions